IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| ZOFIA CZERSKA | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. TMD 12-2238 |
| | ) | |
| CAROLYN CW. COLVIN | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|     Defendant. | ) | |

MEMORANDUM OPINION GRANTING PLAINTIFF'S
MOTION FOR REMAND

Zofia Czerska ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"), and Childhood Disability Insurance Benefits ("CIB") under Title II of the Social Security Act, 42 U.S.C.§§ 401-433, 402(d) and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  42 U.S.C.§§ 1381-83(c)  Before the Court are Plaintiff's Motion for Summary Judgment (Pl.'s Mot. Summ., ECF No. 12), Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 16) and Plaintiff's Reply (Pl.'s Reply, ECF No. 19). No hearing is deemed necessary.  Local Rule 105.6 (D. Md.).  For the reasons presented below, Plaintiff's Motion for Remand is GRANTED.

I. Procedural History

Plaintiff protectively filed applications for DIB and SSI on August 2, 2007 and December 3, 2007 respectively.  R. at 183-88.  She also applied for CIB on February 2, 2008. R. at 5.  Her

claims were denied initially and on reconsideration. R. at 96-99, 101-08, 113-16. On March 1, 2010, a hearing was held before an administrative law judge ("ALJ") at which Plaintiff and a vocational expert ("VE") testified. R. at 46-85. Claimant was represented by counsel. On May 7, 2010, the ALJ issued a partially favorable decision in this matter and awarded a closed period of disability from January 2, 2003 through June 2, 2008 based on a finding that Claimant was disabled. R. at 24-41. The ALJ found that on June 2, 2008, medical improvement occurred that related to the ability to work and Claimant has been able to perform substantial gainful activity from that date through the date of the decision.[1] Specifically, beginning June 2, 2008, the ALJ found that considering Claimant's age, education, work experience, and residual functional capacity, she has been able to perform her past relevant work and a significant number of jobs in the national economy. Thus, it was found, disability ended on June 2, 2008. The ALJ failed to adjudicate Claimant's claim for CIB.

On review, the Appeals Council affirmed the ALJ's period of closed disability with respect to her claims for DIB and SSI and additionally found that Claimant was also entitled to

---

[1] Since Claimant was found disabled during the sequential evaluation process, the ALJ was required to determine if her disability continues or ends through the date of the decision. The ALJ must follow an eight-step and three-step continuing disability review evaluation process for Title II(DIB) and Title II (CIB) claims, respectively and a seven-step continuing disability review evaluation process for a Title XVI (SSI) claim . *See* 20 C.F.R. §§ 404.1594(f), 416.994(b)(5); 416.994a(b)(1). Under each of the continuing disability review evaluation processes, there is no presumption of continuing disability. *See Rhoten v. Bowen,* 854 F.2d 667, 669 (4th Cir.1988) (noting, with the enactment of the Social Security Disability Benefits Reform Act of 1984, in determining whether there has been medical improvement resulting in termination of disability benefits, "such a determination must be made on a neutral basis 'without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled.' ") (citation omitted); *see* 20 C.F.R. §§ 404.1594(b)(6), 416.994(b)(1)(vi) (2009). As discussed below, the ALJ failed to adjudicate the CIB claim. Nevertheless, the Court need not recount the specific findings at each step for the DIB and SSI claims because, as discussed below, the ALJ's ultimate finding that Claimant experienced medical improvement is not supported by substantial evidence and that finding applies equally to all three claims.

CIB based on this same closed period. R. at 5-7. Plaintiff argues that the finding that her disability ceased as of June 2, 2008 is not supported by substantial evidence. She argues that she is entitled to continuing disability benefits.

## II. Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

## IV. Discussion

Plaintiff makes the following arguments which have been summarized and reordered for sake of clarity: (1) the ALJ erred in finding that her condition medically improved as of June 2, 2008; (2) the ALJ relied on a misdated treatment note; (3) the ALJ erred in not affording the

consultative examiner's opinion significant weight; (4) the ALJ erred in not affording her treating psychiatrist's opinion controlling weight; (5) the ALJ erred his findings regarding Listing 12.04; (6) the ALJ erred in finding she could perform her past relevant work; and (7) the ALJ erred in his credibility determination. While the Court has reviewed each argument listed above, the critical issue in this case is whether the ALJ's finding that Plaintiff medically improved is supported by substantial evidence. A medical improvement is defined as any decrease in the medical severity of the impairment which was present at the time of the most recent favorable medical decision that Claimant was disabled or continued to be disabled. 20 CFR § 404.1594(b)(1). Such a determination "must be based on changes (improvement) in the symptoms, signs, and/or laboratory findings associated with your impairment(s), and must be related to the ability of the claimant to perform work activities." 20 CFR § 404.1594(b)(1), 404.1594(b) (3). The government bears the initial burden of proving medical improvement i.e., that claimant's disability has ended. *Pack v. Heckler,* 740 F.2d 292, 294 (4th Cir.1984). After careful review of the record in this case, the Court finds that Government failed to meet this burden.

There is no dispute as to the overwhelming evidence which led to a conclusion of a closed period of disability on behalf of Plaintiff. The record evidences a long history of bipolar disorder for which Plaintiff was under consistent treatment. In order to properly analyze whether Claimant experienced marked improvement, it is useful to lay out a framework of Plaintiff's condition which led to the finding of disability prior to the date at which the ALJ found medical improvement.

4

A.  Overview of Claimant's Mental Impairment

Beginning in January, 2007, Plaintiff was treated by psychiatrist, Dr. Kirk Denicoff, who saw her approximately every two weeks. R. at 326-59, 394. On September 26, 2007, Dr. Denikoff completed a Mental Impairment Questionnaire in which he indicated that Claimant was either limited or was not able to perform satisfactorily all of the mental abilities or aptitudes to complete even unskilled work. R. at 362, 394-95. He expressed that Claimant suffered from marked restrictions in daily living and extreme restrictions in maintaining social functioning and maintaining persistence, concentration or pace. He further opined she experienced four or more episodes of decompensation within a twelve month period, each of at least two weeks duration. *Id*. at 362. Dr. Denicoff also indicated that as of September 26, 2007, Claimant's condition had not been stabilized and that she had a residual disease process that had resulted in such marginal adjustment that even a minimal increase in mental demands would be predicted to cause decompensation. R. at 395.

On October 12, 2007, Dr. Charles T. Gordon, psychiatrist indicated that he had treated Claimant for approximately seven years and reported that her treatment included medication (antidepressants, mood stabilizers, and antipsychotics) and individual and group counseling. R. at 127. He indicated that during depressive phases, Claimant experiences sad and irritable mood, anhedonia, sleep and appetite disturbance, severe anxiety, multiple somatic complaints, feelings of worthlessness and hopelessness, impaired concentration and suicidal ideation. *Id*. During manic periods, she exhibited euphoria and/or extreme irritability, impatience, pressured speech and behavior, excessive energy, impulsivity, poor judgment leading to irrational

5

dangerous actions, delusions and hallucinations. *Id*. He further reported that Claimant exhibited many severe manic, depressive and mixed episodes which have been treatment refractory and resulted in serious impairment in social, occupational, family and academic functioning. *Id*. Significantly, he reported that during her treatment period, there were few periods of true stability and that she was impaired by Bipolar Disorder symptomatology approximately 90% of the time. *Id*.

On April 23, 2008, Claimant was seen by consultative examiner George Moore, D.O. at the request of the Maryland State Disability Determination Services. R. at 414. Based on the evaluation, Dr. Moore indicated that Claimant had multiple and quite severe symptoms of depression and "mixed state." R. at 419. She had extremely poor concentration by her report and some testing and that she did not have concentration sufficient to be persistent on tasks. R. at 419. He found that she lacked the ability to cope with work related stresses and demands and the ability to cope with the stress and demands that accompany social interactions. He also assessed Claimant to have a Global Assessment of Functioning (GAF) of 50 defined as serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting), or any serious impairment in social, occupational, or school functioning (e .g., no friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders (DSM–IV),* 32 (4th ed.1994). He opined that if she continued psychotherapy and frequent psychiatric evaluation and medication, she had a fair to good prognosis for achieving mood stability but that if she gave up treatment, she would have a grave prognosis. R. at 419.

    B.    <u>Medical Improvement</u>

The ALJ found that as of June 2, 2008, the Claimant had experienced medical improvement which related to her ability to work resulting in an ability to perform her past relevant work or other work existing in significant numbers in the national economy. R. at 39-40.[2] In making this finding, the ALJ relied primarily on the following evidence: (1) various treatment notes by Dr. Denicoff spanning June 5, 2008 through July 24, 2009 (R. at 446, 449-450, 465-66, 473, 476, 484) (2) a June 3, 2008 Psychiatric Review Technique form and Mental Residual Functional Capacity Assessment form and statement completed by state agency consultants; R. at 427-44, 461 and (3) Claimant's work history. R. at 39. In addition, the ALJ found that certain evidence was not entitled to any weight; most notably the April 23, 2008 opinion by Dr. Moore discussed above as well as a February 5, 2010 opinion by Dr. Denicoff discussed in detail below. R. at 414-19, 557.

The Court has reviewed Dr. Denicoff's treatment notes cited by the ALJ in support of his finding that Claimant had medically improved while mindful that the Court should not attempt to reweigh the evidence *de novo* or resolve evidentiary conflicts. *Craig,* 76 F.3d at 589; *Hays,* 907 F.2d at 1456. In addition, the Court notes that although the ALJ need not address every piece of evidence in the record, an ALJ must articulate the bases for his findings and may not "cherry-pick" evidence that supports a preordained RFC determination. *See Denton v.*

---

[2] Key to the ALJ's analysis was that prior to June 2, 2008, the ALJ found Claimant to have "above-moderate limitations as to completing a normal work day or work week without interruptions from psychologically based symptoms and as to performing at a consistent pace without an unreasonable number of length of rest periods. She had above-moderate limitations as to accepting instructions and responding appropriately to criticism from supervisors, and interacting and getting along with co-workers and peers." R. at 35. As of June 2, 2008, the ALJ found Claimant to possess the same limitations except that they were "moderate" as opposed to "above-moderate." R. at 38.

*Astrue,* 596 F.3d 419, 425 (7th Cir.2010); *McCain v. Astrue,* No. 4:11CV69, 2012 WL 928504, at *7 (E.D.Va. Feb. 22, 2012). Given this backdrop, the Court finds that substantial evidence does not support the ALJ's finding that Claimant experienced medical improvement as of June 2, 2008. The Court does not dispute that various statements in Dr. Denicoff's notes spanning June 5, 2008 through July 24, 2009 reveal that Claimant's condition seemed to have improved *at times*. Indeed, there is no doubt that the notes reveal that Claimant seemed more positive and was experiencing a better mood over the time frame after June, 2008 as the ALJ noted. R. at 31, *see, e.g.,* 446, 449, 450. However, a fair reading of the treatment notes presents a longitudinal picture that while Claimant may have experienced intermittent periods of improvement, there was equal (if not more) evidence of, for example, decreased mood, low energy, confusion, increased tremors, decreased activity, trouble thinking, feelings as if she is in a foggy haze, and sedated feelings. R. at 466-81. For example, while the ALJ cites to Dr. Denicoff's June 5, 2008 treatment note describing Claimant as stable and exhibiting good mood and energy level, Dr. Denicoff reported on June 27, 2008 (the next visit), that Claimant's mood had changed after her commencement of part-time work, her energy level was down, socializing made her nervous, she had trouble interacting with her boss and her memory was still a problem. R. at 31, 489. She specifically reported that although she was working 20 hours per week, it felt like too much, there was a lot of interacting with people and she was going to request less hours. *Id.* In addition, while the ALJ cites Dr. Denicoff's August 12, 2008 and September 5, 2008 treatment notes indicating positive mood swings, Dr. Denicoff reported in his August 29, 2008 report that Claimant was unable to do any work due to poor concentration,

anxiety, memory and mood and disorganization. R. at 457. On October 17, 2008, Dr. Denicoff reported Claimant's mood was again down. R. at 482. On November 11, 2008,[3] Dr. Denicoff noted that although her mood was better "at times", she was easily saddened, got confused, was having trouble with her memory, and had trouble with organization. R. at 481. These are just a few examples of the contemporaneous treatment notes of Dr. Denicoff which clearly undermine the ALJ's findings of Claimant's mental impairment after June 2, 2008.

Moreover, in a February 5, 2010 statement, Dr. Denicoff reported that Claimant remained under his care and continues to see a therapist weekly. R. at 557. As the ALJ noted, Dr. Denicoff reported that Claimant had improved since his September 26, 2007 report and was working part-time as a lifeguard as well as doing some volunteer work. *Id*. However, Dr. Denicoff went on to report:

> Nonetheless, Ms. Czerska remains markedly impaired in her activities of daily living and social functioning. She remains socially isolated, finds it difficult to leave the house by herself, and does not normally participate in many household activities such as cleaning, laundry, or cooking. She also reports that she experiences hypersomnia and comes home feeling exhausted after part-time work. She has difficulty with organizing, following through, and expressing her thoughts in a clear manner. It is my opinion that it is likely the pressure of full time work would lead to an exacerbation of her illness.

*Id*. The ALJ gave Dr. Denicoff's opinion little weight as he found it inconsistent with his treatment notes and Claimant's ability to engage in part time and volunteer work. The Court does not find substantial evidence to support the ALJ's rejection of the opinion of Claimant's treating physician. As summarized above and contrary to the ALJ's findings, Dr. Denicoff's

---

[3] As discussed below, the treatment note appears to be dated January 7, 2008 but was actually from November 11,

treatment notes reflect significant mental impairments over the relevant time period. The issue is not whether Claimant's mood improved or whether she was generally doing better. *See, e.g. Carlson v. Shalalal*, 841 F. Supp. 1030, 1037 (D. Nev. 1993) (medical improvement does not occur based on temporary remission); *see also* POMS § DI 28010.115 (listing mental disorder as subject to temporary remission). The issue is whether Claimant experienced a medical improvement to the degree necessary that she could maintain substantial gainful activity. Clearly, Dr. Denicoff opined that while Claimant may have been capable of the part-time employment she was doing (this employment is discussed below in more detail), her mental state would deteriorate if she were to increase to full time.[4] The Court finds Dr. Denicoff's treatment notes discussed above support his February 5, 2010 opinion, and the ALJ's reasons for rejecting his opinion are not supported by substantial evidence. *See* 20 C.F.R §§ 404.1527(d)(2), 416.927(d)(2); *Mastro v. Apfel,* 270 F.3d 171, 178 (4th Cir.2001) (treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical evidence and not inconsistent with other substantial evidence of record).

Moreover, Dr. Denicoff's opinion was consistent with other evidence in the record; most notably, the opinion of consultative examiner Dr. Moore. R. at 414-20. In reviewing Dr. Moore's opinion, the ALJ found it was not entitled to significant weight because it did not mention "that at least as of January of that year [Claimant] had been working as a lifeguard for

---

2008.
[4] Dr. Denicoff also completed an August 22, 2010 report which was admitted into evidence to the Appeals Council. R. at 564-65. He explained that while he believed it was therapeutic for Claimant to work part-time, an increase to full time work would exacerbate her symptoms and lead her to not working at all. *Id*.

ten hours a week and had been volunteering at a school three days a week." R. at 34. He therefore found that Dr. Moore did not have full and accurate information upon which to base his opinion. *Id.* However, it was the ALJ who erred in finding Claimant began her work as a lifeguard in January, 2008.[5] Dr. Denicoff has since clarified that the record upon which the ALJ relied contained a typographical error and that Claimant actually did not begin her work as a lifeguard until June, 2008. R. at 564-65.[6] Accordingly, the primary basis upon which the ALJ chose to reject Dr. Moore's opinion was error and the Court cannot find that the ALJ's finding in this regard is supported by substantial evidence. Dr. Moore examined Claimant on April 23, 2008 – less than two months prior to the date on which the ALJ found medical improvement. R. at 414. His opinion is therefore clearly relevant to the issue at hand; and significantly, entirely consistent with the opinion of Dr. Denicoff, Plaintiff's treating physician whose opinions are discussed in detail above. In addition, the opinions of Dr. Moore and Dr. Denicoff were also consistent the opinion of Claimant's psychotherapist, Ms, Leverich, who treated her for three years on an almost weekly basis. Ms. Leverich reported:

> Only since June 2008 has she been able to perform the function of a lifeguard for

---

[5] In fact, at various other places in his opinion the ALJ did recognize that Claimant did not begin her employment as a lifeguard until June, 2008. However, because, as discussed above, the ALJ specifically relied on this mistaken fact to reject the opinion of Dr. Moore (as well as find Claimant not credible), the Court finds that the error was indeed, harmful.

[6] The ALJ also found Claimant not entirely credible for the period after he found medical improvement. R. at 38. In his discussion of Dr. Moore's report, the ALJ stated: "[t]here is no mention at all in his report (*and it must be assumed that the claimant did not tell him)* that at least as of January of that year she had been working a s a lifeguard . . ."). Later in his opinion, the ALJ specifically states that Claimant neglected to tell Dr. Moore that she had actually worked part time as a lifeguard. R. at 38. While the Court need not address in detail the ALJ's findings regarding Claimant's credibility, to the extent he based his finding on a perceived failure to disclose her work history, the Court also finds that the ALJ erred.

a few hours two to three times a week under the presence of a pool manager.
There were days she was unable to go to work which is also true of her limited
activity in helping tutor . . .I have seen [Claimant] try very hard to perform in a
consistent fashion; however, there are many days in a week when she is
significantly impacted by her illness so that she cannot function due to her
inability to concentrate, organize her thoughts, lack of energy, or follow even
simple instructions. She often withdraws due to severe depression and at times
racing thoughts.

R. at 563.[7] *See also* R. at 314-18 (opinion of Madelyn Schraeder, RN LPC who evaluated Claimant on October 15, 2010).[8]

The ALJ also placed great weight on the fact that Claimant was working part-time as a lifeguard and volunteering at a school. R. at 39. The Court does not find the ALJ's summary of Claimant's part time work as a lifeguard presents a fair representation of her work history. The ALJ stated:

It is noted that, although the claimant's work since June 2, 2008, has been part
time, the undersigned finds it to be substantial and gainful even though the
earnings levels do not reach the presumptive earnings levels, which are
guidelines. Although the claimant's representative has asserted that the claimant
was working only part time and at less than 20 hours a week, the record shows
that the claimant has at times worked up to 10 ¾ hours at a time and 6 ¼ hours at
a time. (Exhibit 17F). . .

R. at 39.

A review of Claimant's time records from June 8, 2008 through October 8, 2009 reveal

---

[7] This evidence was presented to the Appeals Council and made part of the record. R. at 5-7 While therapists such as Ms. Leverich are not "acceptable medical sources" as defined in 20 C.F.R. § 416.913(a), and, thus, not entitled to the automatic substantial or considerable weight given to treating physicians, *see* SSR 06–03p, therapists are recognized as "other sources" whose testimony may be used to provide insight into the severity of a claimant's impairment or how it affects the ability to function. *See* SSR 06–03p; 20 C.F.R. §§ 416.913(d) and 404.1513(d). Given Ms. Leverich's familiarity and treating relationship with Claimant, the Court's opinion that the ALJ erred in finding medical improvement finds further support in Ms. Leverich's opinion.

12

that only on a single occasion did Claimant work 10 ¾ hours, R. at 546, and that, in fact, Claimant averaged over the course of approximately 72 weeks, only approximately 10 hours per week. Pl.'s Mot. Summ., ECF No. 12 at 21. With the exception of one week, she worked only two or three days per week. *Id*. As mentioned above, Claimant reported that lifeguarding was making her feel nervous and the stress of the job had dropped her mood and that she had trouble interacting with her boss. *See, e.g.* R. at 449. Despite the ALJ's assertion that Plaintiff left her employment at WSC to "perhaps so she could pursue other activities," that speculation finds no support in the record. R. at 39. Claimant testified that she left WSC because they wanted to increase her hours and she did not think she could handle it; again, a fact supported by the treatment notes. R. at 69. She got another lifeguard position with Bethesda Sport and Health where she averaged only 10 hours per week. R. at 57, 574; *see also* R. at 69-70 (Claimant testifying she only works mornings to avoid social interaction)[9]; *see also* R. at 565 (Dr. Denicoff August 2010 statement that Claimant has "recently" had to decrease her work schedule to two days per week as opposed to three). In sum, Claimant's work history does not support the ALJ's finding that Claimant was capable of maintaining a regular, full-time work schedule of 5 days per week at 8 hours per day. *See* R. at 557

  Finally, the ALJ also based his finding of medical improvement on the June 3, 2008 findings of non-examining State agency physician consultants Dr. Walcutt, Ph.D. and Dr.

---

[8] This evidence was also presented to the Appeals Council and made part of the record. R. at 5-7.

[9] The Court has also reviewed Plaintiff's argument that the ALJ erred when he found that Claimant reported on January 7, 2008 to Dr. Denicoff that she was working 10 hours per week. As Dr. Denicoff later pointed out, Plaintiff did not report that she working as a lifeguard until November 7, 2008. R. at 564-65.

Aroon Suansilpponse R. at 33-34. R. at 427-40, 441-44, 461. Those physicians found that Claimant's symptoms only moderately impaired her ability to function and that she appears capable to perform competitive employment. R. at 443. The ALJ gave these findings significant weight because he found them to be a "reasonable interpretation of the evidence" after June 2, 2008. R. at 34. The ALJ provided nothing more by way of explanation and the Court need not here as well. As discussed at length above, the evidence supports Dr. Denicoff's opinion as a treating physician; and to the extent the ALJ gave more weight to the opinions of the state agency physicians, the Court finds that substantial evidence does not support this finding

## V. Conclusion

The Court does not find that the ALJ's determination that there was "medical improvement" with respect Claimant's severe mental impairment supported by substantial evidence. The case is remanded for further proceedings in accordance with the foregoing Memorandum. A separate Order shall issue.

Date: September 20, 2013                             /s/                         
                                        THOMAS M. DIGIROLAMO
                                        United States Magistrate Judge